PER CURIAM.
 

 The T. O. F. C. corporation appeals from an order entered by the United States District Court for the Northern District of Ohio (the “Reorganization Court”) denying its claim against the estate of the bankrupt Erie Lackawanna Railway Company.
 

 The case arises out of a contract entered into between Erie and T. O. F. C. dated September 27, 1960. Under the terms of the agreement, T. O. F. C. and Erie invested about $1,950,000 in the construction and operation of piggyback terminal facilities (i. e. facilities used to unload and load truck trailers moved by rail on flat cars) on parcels of land owned by Erie. T. O. F. C. invested $300,000 originally and expended an additional $150,000 in 1967. Erie invested the balance. Under Article Seventh (A) of the agreement, Erie had agreed to reimburse T. O. F. C. for its construction investment costs as follows:
 

 Erie hereby agrees to pay quarterly to TOFC the sum of $0.75 per revenue motor common carrier trailer handled at the terminal facilities for so long a time (not to exceed 15 years from the operation date) as is necessary to repay to TOFC
 
 *1228
 
 the sum of $300,000 as provided in paragraph (c) of Article 2d plus interest.
 

 Article Seventh (A) further provided that:
 

 In the event that the total number of such trailer handlings is not adequate to repay said $300,000 with interest as aforesaid within the period of 15 years, then Erie shall have no further obligation with respect to such repayment.
 

 For purposes of determining amounts due under Article Seventh (A) of the Agreement, Article Seventh (D) defined the term “revenue motor common carrier trailer handled” as:
 

 (i) The loading of a motor common carrier trailer on a railroad flat ear, which trailer, when moved by Erie, will earn revenue for Erie; or
 

 (ii) The unloading of a motor common carrier trailer from a railroad flat car, which trailer, having been moved by Erie, has earned revenue for Erie.
 

 The parties faithfully carried out the terms of this agreement until Erie filed a petition for reorganization on June 27,1972. Nonetheless, acting pursuant to an order from the Reorganization Court, the Trustees of the railroad agreed to operate under the agreement. On March 18, 1975, however, the Reorganization Court, in accordance with the 1975 Amendments to the Regional Rail Reorganization Act, 45 U.S.C. §§ 701
 
 et seq.,
 
 determined that Erie was no longer able to reorganize on an income basis and ordered that the reorganization proceed under the Rail Act. Thereafter, the Special Court created by the Rail Act directed the railroad’s Trustees to convey substantially all of Erie’s transportation related property, including the land on which the piggyback facilities were located, to Conrail.
 

 On April 1, 1976, Erie’s property was conveyed to Conrail.
 
 [1]
 
 Since April 1, 1976, the Trustees have ceased all railroad operations, and, as a consequence have not earned any revenue on any trailers moved through the piggyback facilities. Since April 1, 1976, the Trustees have refused to reimburse T. O. F. C. the amount, approximately $100,000, claimed to be still due it as a result of the agreement. Conrail, however, in its operations has been paying T. O. F. C. for the use of the facilities, but has declined to pay T. O. F. C. $0.75 per trailer to complete repayment to it of the amount it invested in the terminal.
 

 T. O. F. C. has raised a number of arguments in this appeal. We, however, deal only with one; namely, whether Erie had any further obligation to reimburse T. O. F. C. after April 1, 1976, under the terms of the agreement. As earlier mentioned, Article Seventh (A) provided that Erie would repay T. O. F. C. $0.75 for every trailer Erie moved through the facilities and which earned Erie revenue “for so long a time (not to exceed 15 years from the operation date) as is necessary to repay T. O. F. C. ...” Immediately following this language, Article Seventh (A) further provided:
 

 In the event that the total number of such trailer handlings is not adequate to repay [T. O. F. C.] ... within the period of 15 years, then Erie shall have no further obligation with respect to such repayment.
 

 The Reorganization Court held that this language conditioned Erie’s contractual duty to reimburse T. O. F. C. upon Erie’s handling of Trailers through the facilities which earned revenue for Erie. Since, the Court reasoned, Erie no longer was moving trailers and since Erie was no longer earning any revenue on any trailers moved through the facilities, Erie no longer had a contractual duty to repay T. O. F. C.
 

 T. O. F. C. now contends that the parties to the agreement intended that T. O. F. C. be completely reimbursed. It argues specifically that Article Seventh (A) provides simply one method — not an exclusive method— by which T. O. F. C. was to be reimbursed and, in any event, Article Seventh cannot be interpreted as conditioning Erie’s duty to reimburse T. O. F. C. Viewing the agreement as a whole or Article Seventh by
 
 *1229
 
 itself, we are of the opinion that it does not support T. 0. F. C.’s argument. Article" Second (C) expressly provided that Erie was to repay T. 0. F. C.
 
 “only
 
 as provided in Paragraph (A) of Article Seventh ...” And recitals to an amendment of the agreement provided that “Article Seventh of the ... [agreement] provides
 
 the
 
 method by which Erie is to reimburse T. 0. F. C.” and that “ ‘capital expenditures’ be reimbursed to T. 0. F. C. by Erie
 
 in accordance with, and as provided by
 
 Article Seventh of [the agreement].” In short, we think it clear that Erie’s duty to repay T. 0. F. C. was governed exclusively by Article Seventh.
 

 We think it equally clear that Article Seventh conditioned Erie’s obligation to repay T. 0. F. C. upon Erie’s earning revenue on trailers which it moved through the facilities. Since Erie has received no additional revenue since April 1, 1976, it has no liability.
 

 For these reasons and the additional reasons set forth in the 14 page Order No. 850 entered by District Judge Krupansky, it is ordered that the judgment of the District Court be affirmed.
 

 [1]
 

 . Conrail has refused to assume Erie’s obligations under the agreement with T. O. F. C. Since T. O. F. C. has not raised the issue, we do not decide whether this constituted a breach of any nonassignability provision of the agreement.